# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 13-003 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION A NEW TRIAL OR JUDGMENT OF ACQUITTAL** |
| DEMARIO KENTRELL BOOKER, | |
| Defendant. | |

Carol M. Kayser, LeeAnn K. Bell, and Richard Newberry, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Douglas Olson, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

On April 24, 2013, following a three-day jury trial, the jury found defendant Demario Kentrell Booker guilty of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Booker now brings a motion for a new trial and a renewed motion for judgment of acquittal. Because the Court finds that it did not err in responding to the jury's request for supplemental instruction and any prosecutorial misconduct during closing arguments did not prejudice Booker's right to a fair trial, it will deny Booker's motion for a new trial. The Court will also deny Booker's motion for judgment of acquittal because it finds that there was sufficient evidence that Booker possessed the firearm to support the jury's verdict.

**BACKGROUND**

On November 20, 2012, at approximately 2:00 a.m. Minneapolis police officers attempted to conduct a traffic stop of a vehicle in north Minneapolis. (Tr. 40:14-17, 42:3-9, 53:1-3, 86:7-9.)[1] The vehicle was being driven by Booker, but belonged to Daniel Mack, who was a passenger in the back seat at the time. (Tr. 42:16-19, 49:4-12, 52:17-21, 122:15-18.) Booker did not stop the vehicle when he observed the police behind him, but rather sped away. (Tr. 53:13-19, 55:15-19, 124:20-125:7.) The vehicle eventually stopped in Robbinsdale, whereupon the police arrested Booker and detained Mack and the vehicle's front-seat passenger, Michelle Crook. (Tr. 12:1-11, 55:8-14, 63:6-7, 63:16-64:9, 72:19-21.) The police searched the vehicle and recovered a firearm from the floor of the vehicle under the brake pedal. (Tr. 64:7-9, 65:13-14, 79:11-17.)

At trial, Crook testified that before the police attempted to stop the vehicle, Booker pulled out a gun and "showed it," and then dropped it onto the floor of the car. (Tr. 12:15-24.) Crook also testified that as Booker sped away from the police he attempted to reach down under the seat to retrieve the gun from the floor, and continued to ask Crook and Mack to help him find the gun. (Tr. 13:1-8.) Mack testified to a slightly different version of events, explaining that at some point during the events of November 20 he "drew an assumption that [Booker] had a gun in the car." (Tr. 46:23-47:5.) Mack testified that because of the high speed chase, he reasoned that Booker must

---

[1] "Tr." refers to Volume I of the trial transcript. "Tr. Vol. II" refers to Volume II of the trial transcript.

have something in the car that he did not want the police to discover, explaining "[b]asically, it was drugs or guns.  I didn't really know though.  I couldn't say for a fact that I knew or seen anything."  (Tr. 47:10-19.)  Mack also testified that at some point during the car trip Booker "made a reference" to a gun, but that he never saw Booker with a gun on November 20.  (Tr. 48:6-20.)

Booker also presented testimony at trial.  Booker testified that as he was speeding away from the police Mack told him that Mack's gun was under the seat, explaining that "he had his hammer under the seat."  (Tr. 125:14-23.)  Booker testified that upon learning this information he panicked and began feeling under the car seat, looking for the gun.  (Tr. 126:3-9.)  Booker testified that on November 20 he never possessed, touched, saw, or controlled a gun.  (Tr. 148:9-18.)  Mack testified that he had not put a gun in his car on November 20.  (Tr. 60:15-17.)[2]

In addition to the testimony regarding the events of November 20, Agent Martin Siebenaler of the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified that the gun recovered from the vehicle was manufactured in Massachusetts.  (Tr. 91:25-92:4, 93:19-94:9.)  Furthermore, the parties stipulated that Booker had previously been convicted of a felony and that on November 20 he was an unlawful user of and addicted to a controlled substance.  (Tr. 94:17-95:7.)

---

[2] Mack has been convicted of multiple felonies and provided testimony pursuant to an immunity agreement that his testimony would not subject him to prosecution for, among other crimes, being a felon in possession of a firearm.  (Tr. 37:9-11, 57:8-10, 58:10-15.)

After the prosecution presented its case, Booker moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) arguing that the evidence was insufficient to sustain a conviction. (Tr. 96:2-5.) The Court denied the motion. (Tr. 96:8-9.) Following the defense's presentation of evidence, the Court submitted the case to the jury. (Minute Entry, Apr. 24, 2013, Docket No. 92.)

The jury returned a verdict against Booker, finding him guilty of being a felon/illegal drug user/drug addict in possession of a firearm, as charged in the indictment. (Verdict Form, Apr. 24, 2013, Docket No. 93.) Booker then filed a timely motion for a new trial under Federal Rule of Criminal Procedure 33(a) on the basis that the jury instructions related to constructive possession were erroneous and that the prosecutor engaged in misconduct during closing arguments by referring to facts not in evidence. (Mot. for New Trial, May 7, 2013, Docket No. 98); *see* Fed. R. Crim. P. 33(b)(2) (providing that a motion for a new trial "must be filed within 14 days after the verdict or finding of guilty"). Booker also timely renewed his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c). (Mot. for New Trial); *see* Fed. R. Crim. P. 29(c)(1) (providing that a motion for acquittal may be renewed "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later"). Booker submitted a memorandum in support of his motions on January 2, 2014, and the United States responded on January 16, 2014. (Def.'s Mem. in Supp. of Mot. for a New Trial, Jan. 2, 2014, Docket No. 120; Government's Resp. to Def.'s Mot. for New Trial, Jan. 16, 2014, Docket No. 127.)

## ANALYSIS

## I.   MOTION FOR A NEW TRIAL

Booker moves for a new trial on the grounds that the Court erred in responding to the jury's request for supplemental instructions and therefore failed to properly instruct the jury with regard to "constructive possession."  Additionally Booker argues that a new trial is warranted because the prosecution engaged in misconduct during closing argument when it referred to facts not in evidence.

### A.   Standard of Review

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "The district court has broad, but limited, discretion to grant or deny a motion for a new trial based on the sufficiency of the evidence, and it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict."  *United States v. Vega*, 676 F.3d 708, 722 (8th Cir. 2012) (internal quotation marks omitted). "The court should 'balance the alleged errors against the record as a whole and evaluate the fairness of the trial' to determine whether a new trial is appropriate."  *United States v. Eagle*, 137 F.3d 1011, 1014 (8th Cir. 1998) (quoting *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988)).  But a motion for a new trial should be granted "'sparingly and with caution'" and "'only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred.'"  *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (quoting *United States v. Starr*, 533 F.3d 985, 999 (8th Cir. 2008)).

**B.     Jury Instructions**

Booker's first ground for a new trial is that the Court failed to appropriately respond to the jury's request for supplemental instructions after deliberations began. Booker argues that in light of the question, the Court's instructions on "constructive possession" failed to adequately instruct the jury as to what constituted possession of a firearm sufficient to support a guilty verdict.

**1.     Jury Question**

Before deliberations, the Court instructed the jury with respect to element two of the charge, which requires the defendant to have "knowingly possessed the firearm described in the indictment."  (Jury Instruction 19, Apr. 24, 2013, Docket No. 89.)  As to knowledge, the Court instructed the jury that:

> An act is done "knowingly" if the defendant was aware of the act and did not act through ignorance, mistake, or accident.  The prosecution is not required to prove that the defendant knew his conduct was unlawful.
>
> Knowledge may be proved like anything else.  You may consider any statements made and acts done by the defendant, and all the facts and circumstances in evidence which may aid in determination of the defendant's knowledge.

(*Id.* 20.)  With respect to possession, Jury Instruction 19 provided that:

> The law recognizes several kinds of possession.  A person may have actual possession or constructive possession.  A person may have sole or joint possession.
>
> A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.
>
> If one person alone has actual or constructive possession of a thing, possession is sole.  If two or more persons share actual or constructive possession of a thing, possession is joint.

(*Id.* 19.)   Neither the United States nor defense counsel objected to any of these instructions or suggested any modifications during the charging conference.  (Tr. 155:1-4.)

During deliberations the jury asked the Court "Can you have constructive possession without touching the gun?"  (Response to Jury's Question 1, Apr. 24, 2013, Docket No. 90.)   After receiving the question, the Court convened a telephone conference.   At the conference, defense counsel suggested referring the jury to the original Jury Instruction 19, as well as element two of the charge requiring the defendant to have "knowingly possessed the firearm."  (Tr. Vol. II 70:5-6.)  Defense counsel went on to suggest that in light of the jury's question, Jury Instruction 19 was not "actually entirely accurate" and suggested an additional instruction to the effect that "constructive possession generally requires knowledge of an object, the ability to control it and the intent to do so" and a "mere presence" instruction, which would inform the jury that "merely being present in a vehicle in which a gun is discovered is not enough to establish constructive possession."  (Tr. Vol. II 70:7-23.)  The United States opposed the additional language arguing that "the constructive possession instruction that the Court has given has covered the notion of mere presence, and so any additional language of that would be

to emphasize that in an unnecessary way," and recommended that the Court respond to the question with the answer "yes" and refer the jury to Jury Instruction 19. (Tr. Vol. II 71:1-6, 72:1-5.) After hearing the parties' arguments the court responded:

> I think we should refer them to instruction number 19, and I think the language in 19 really does get at this issue, albeit maybe not as directly as the question provides, but it just says, A person has both the power and the intention at a given time to exercise control, dominion or control over a thing, either directly or through another person or persons, that's a fairly explicit definition of constructive possession.

(Tr. Vol. II 72:6-14.)   The Court declined to simply provide a yes or no answer explaining "[i]t's more detailed than that . . . [t]hey have to analyze much more than the touching issue." (Tr. Vol. II 72:19-24.)

In response to the jury's question, the Court answered:

> The Court refers the jury to Instruction 19, which provides, in part, as follows: "A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons is then in constructive possession of it." The Court also refers the jury to Element Two of the crime, which requires the prosecution to establish beyond a reasonable doubt that "the defendant knowingly possessed the firearm."

(Response's to Jury's Question 1.)   The jury asked no additional questions before returning its verdict later that day.

## 2.    Adequacy of Response and Instructions

Booker argues that the Court's response to the jury's question was insufficient in failing to include a mere presence instruction and allowed the jury "to convict Mr. Booker if they found that he knew about the gun after Mr. Mack said 'there's a gun in the car,' and then tried to locate it by fumbling under the seat as he was driving."

(Def.'s Mem. in Supp. of Mot. for a New Trial at 6.)  Booker argues that after the jury's question was posed, the instructions were insufficient because based upon them "the jury could find constructive possession based on [Booker's] 'intention' and 'power' to grab [the gun] if he could.  This is clearly insufficient to establish possession of an object that he never actually possessed and was discovered in someone else's vehicle." (*Id.* at 4.)

The Court's "response to a jury's request for supplemental instruction is a matter within [its] sound discretion." *United States v. Hayes*, 574 F.3d 460, 481-82 (8th Cir. 2009) (internal quotation marks omitted).  "When responding to a jury's explicit request for supplemental instructions the [Court] must take great care 'to insure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial.'" *United States v. Smith*, 104 F.3d 145, 148 (8th Cir. 1997) (quoting *United States v. Skarda*, 845 F.2d 1508, 1512 (8th Cir. 1998)).  Additionally, the Court must "answer with concrete accuracy, and within the specific limits of the question presented." *United States v. Morrison*, 332 F.3d 530, 532 (8th Cir. 2003) (internal quotation marks omitted).  The Eighth Circuit has recognized that "'in responding to a jury's request for supplemental instruction, it may be proper at times to simply refer the jury back to the original instructions.'" *United States v. Hudspeth*, 525 F.3d 667, 679 (8th Cir. 2008) (quoting *United States v. Abdul-Aziz*, 486 F.3d 471, 476 (8th Cir. 2007)).  In ascertaining the appropriateness of a response the Court views the response in light of the instructions as a whole and in the context of the evidence presented at trial. *See United States v. Levine*, 477 F.3d 596, 604 (8th Cir. 2007) (explaining that an answer to a jury's question "is not to be viewed in isolation"); *see also United States v. Claxton*, 276 F.3d 420, 424 (8th Cir.

2002) ("We determine the adequacy of instructions by looking at the instructions as a whole and in the context of the trial.").

Booker's motion challenges the Court's response as it related to the element of constructive possession. "To obtain a conviction under 18 U.S.C. § 922(g)(1) the government must prove beyond a reasonable doubt that (1) the defendant has previously been convicted of a [felony], (2) the defendant knowingly possessed a firearm, and (3) the firearm has been in or has affected interstate commerce." *United States v. Wells*, 469 F.3d 716, 719 (8th Cir. 2006) (internal quotation marks omitted); *see also United States v. Cornelison*, 717 F.3d 623, 626 (8th Cir. 2013). "Possession may be actual or constructive." *United States v. Howard*, 413 F.3d 861, 864 (8th Cir. 2005). "Constructive possession of a firearm is established if [the defendant] had control over the place where the firearm was located or control, ownership, or dominion over the firearm itself." *United States v. Guenther*, 470 F.3d 745, 747 (8th Cir. 2006). "Constructive possession 'requires knowledge of an object, the ability to control it, and the intent to do so.'" *United States v. Piwowar*, 492 F.3d 953, 955 (8th Cir. 2007) (quoting *United States v. Cuevas-Arrendondo*, 469 F.3d 712, 715 (8th Cir. 2006)). "Mere physical proximity to a firearm is not enough to show constructive possession, 'but knowledge of [a firearm's] presence, combined with control is constructive possession." *United States v. Smith*, 508 F.3d 861, 866 (8th Cir. 2007) (alteration in original) (quoting *United States v. Stevens*, 439 F.3d 983, 990 (8th Cir. 2006)).

The Court concludes that it adequately responded to the jury's request for supplemental instruction with respect to constructive possession. In response to the

question "Can you have constructive possession without touching the gun?" the Court referred the jury to the original instructions which explained that Booker could be in constructive possession of the firearm if he had "both the power and intention . . . to exercise dominion or control over" the firearm. (Jury Instruction 22.) Additionally, the Court referred the jury to the instruction that any possession by Booker must have been knowing." (*Id.* 17.) Given the facts of the case, these instructions adequately answered the question of whether there can be constructive possession without touching the gun. *See Smith*, 104 F.3d at 148-49 (finding no abuse of discretion where the district court referred the jury to instructions patterned on the Eighth Circuit Model Jury Instructions defining constructive possession in response to the jury question "Does constructive possession mean you have to know that an item is in your presence in order to possess that item?"). It is clear from the original instructions that an individual could have the intention to exercise control over a firearm without touching the firearm, and therefore the Court's reference back to Jury Instruction 17 and element two of the crime was responsive to the jury's question.

The Court properly rejected defense counsel's proposed mere presence instruction because it was non-responsive to the question. *See Hudspeth*, 525 F.3d at 679 (explaining that supplemental instructions must be given "within the specific limits of the question presented"). In other words, knowing that mere presence at the scene cannot be the basis of constructive possession would not have alerted the jury to the fact that constructive possession can exist even where the defendant has not touched the object in question. Instead, defense counsel requested the instruction because he believed the

jury's question signaled a deeper confusion about the issue of constructive possession. But "[a] trial court is not required to speculate upon what a jury's purpose may be in making inquiry during its deliberation . . . and the court, if it chooses to make reply, ordinarily has the right to answer the inquiry or grant the request within the specific limits of the jury's question." *See Apel v. United States*, 247 F.2d 277, 283 (8th Cir. 1957) (holding that the court was not required to provide the jury with supplemental information in response to a question based upon appellant's contention that the jury question indicated confusion about the supplemental matter).  Because the mere presence instruction was not responsive to the jury's question, giving the instruction in response to the question would not have been a "neutral" and "non-prejudicial" answer as it would have inappropriately emphasized the defense's theory of the case.

Furthermore, the Court rejects Booker's more general contention that in the absence of a "mere presence" instruction, the Court's instructions allowed the jury to reach a guilty verdict without finding beyond a reasonable doubt that Booker knowingly possessed the firearm.  In light of the facts of this case, the jury instructions as a whole adequately encompassed the proposition that mere presence in the car would have been insufficient to support a conviction, because in such a scenario Booker would have lacked the intention to exercise dominion or control over the gun. *See United States v. Manning*, 618 F.2d 45, 48 (8th Cir. 1980) ("[A] defendant is not entitled to a particularly worded instruction where the instructions given by the trial judge adequately and correctly cover the substance of the requested instruction.").  Based on the instructions provided by the Court, defense counsel was entitled to, and did, argue that Booker was merely the driver

of the vehicle, that the gun belonged to Mack, and that Booker did not exercise control over the gun. *See United States v. Christy*, 647 F.3d 768, 770 (8th Cir. 2011) ("Even where the court declines to give an instruction on a theory of defense that is supported by the evidence, there is no error if the instructions as a whole, by adequately setting forth the law, afford counsel an opportunity to argue the defense theory and reasonably ensure that the jury appropriately considers it."). Here, Booker simply argues that he did not have control over the gun and therefore could not have been in constructive possession. The mere presence instruction in this case therefore would have been duplicative of the instructions already provided. *See United States v. Serrano-Lopez*, 366 F.3d 628, 637 (8th Cir. 2004) ("The theory of the defense was, in essence, that the government had failed to carry its burden on two elements of constructive possession – knowledge and control. Thus, the giving of the mere-presence instruction in this case would have duplicated the instructions outlining the elements of the offense, the definition of possession, and the burden of proof.").[3]

---

[3] The Court notes that the Eighth Circuit has, on at least one occasion, required a mere presence instruction in addition to the standard constructive possession instruction. *See United States v. Manning*, 618 F.2d 45 (8th Cir. 1980). In *Manning*, the defendant argued that he was merely present in the vehicle with the guns but did not possess them. *Id.* at 46-47. Manning was a passenger in a vehicle from the window of which a shotgun was disposed of as police officers approached. *Id.* at 46. At trial, Manning's defense was that he was a passenger in the back seat, had never seen the gun in the car, and that he had gotten into the car only minutes before the police arrived. *Id.* at 46-47. Conflicting evidence was presented regarding whether Manning was in the front or back seat and which car passenger dropped the gun out of the window. *Id.* at 47-48. The Eighth Circuit found that Manning was entitled to an instruction that "[m]ere presence on the scene plus association with illegal possessors is not enough to support a conviction for illegal possession of an unregistered firearm unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator." *Id.* at 47. The court explained that the mere presence instruction was necessary because "[t]he court's

(Footnote continued on next page.)

Finally, the adequacy of the jury instructions is not called into doubt by Booker's claim that the jury was permitted to convict him simply based on his failed attempt to locate the gun under the seat.   Under Eighth Circuit precedent, even if this was the finding made by the jury, it was likely sufficient to sustain a conviction for being a felon in possession of a firearm.   *See United States v. Wright*, 682 F.3d 1088, 1090 (8th Cir. 2012) (holding that "Wright drove the vehicle with the knowledge that the firearm was present in the vehicle with him.  This is sufficient to establish his constructive possession of the firearm.").   Because the Court concludes that its response to the jury's question and its jury instructions were adequate, the interests of justice do not require a new trial, and the Court will deny Booker's motion made on this ground.

_____

(Footnote continued.)

instructions recommend conviction if the jury could find, beyond a reasonable doubt, that Manning was at the scene with direct or indirect control of the weapon.  These instructions appear to give credence to the police officers' version of the events, without acknowledging Manning's defense that he was merely a backseat passenger." *Id.* at 48.  The Eighth Circuit has since confined *Manning*'s holding narrowly to its particular facts.  *See United States v. Jordan*, 893 F.2d 182, 185 (8th Cir.) ("Neither the testimony nor facts of this case present as close a question as in *Manning*, despite Jordan's claim that the gun was his girlfriend's.  Unlike in *Manning*, there was no doubt that Jordan was in the front seat, there was no possibility of confusing Jordan with other persons in the car, and there was evidence that Jordan placed the gun in the middle of the front seat.  The very slim defense that Jordan was only present in the car and never in possession of the gun was as well presented to the jury by the instructions given as by Jordan's requested instructions."), *vacated on other grounds by* 496 U.S. 902 (1990); *see also United States v. Claxton*, 276 F.3d 420, 423-24 (8th Cir. 2002).  Here, Booker did not dispute that he knew the gun was in the vehicle, and testified that he was attempting to grab the gun as he drove.  Therefore, Booker's case is unlike *Manning*, in that he did not present evidence that he was merely an unwitting passenger.  *See United States v. Guice*, 238 F. App'x 167, 168 (7th Cir. 2007) (explaining that the mere presence instruction is only warranted where defendant presents evidence "suggesting that he was standing around while others engaged in criminal activity" (internal quotation marks omitted)).

### C.      Prosecution's Statements During Closing Argument

Booker also argues that he is entitled to a new trial as a result of two improper statements made by the prosecution during closing argument.  During closing argument, when discussing actual possession, the prosecution stated "when the defendant took the gun from his waistband, as Michelle Crook testified."  (Tr. Vol. II 7:13-15.)  Defense counsel objected on the basis that the prosecution misstated the evidence, and the Court sustained the objection.  (Tr. Vol. II 7:16-18.)  Additionally, during closing argument the prosecution stated "When is the last time you were under the weather and went out to a club with the PCP in hand and drank to the point where your blood alcohol was .136?" (Tr. Vol. II 15:2-5.)  The defense again objected for misstating the evidence, and the Court sustained the objection.  (Tr. Vol. II 15:6-8.)

Generally "[c]losing arguments must be limited to the evidence and the inferences that can reasonably be drawn from the evidence." *United States v. Davis*, 534 F.3d 903, 914 (8th Cir. 2008).  The Court has "broad discretion to control closing arguments." *Id.* "A prosecutor's improper comments during closing arguments can require reversal of a conviction if they 'prejudiced the defendant's rights in obtaining a fair trial.'" *United States v. Darden*, 688 F.3d 382, 388 (8th Cir. 2012) (quoting *United States v. Herbst*, 668 F.3d 580, 586 (8th Cir. 2012)).  In determining whether a prosecutor's comments deprived a defendant of a fair trial, the Court examines "'the cumulative effect of the improprieties, the strength of the evidence against the defendant, and whether the district court took any curative action.'" *Id.* (quoting *Herbst*, 668 F.3d at 586-87); *see also United States v. Eagle*, 515 F.3d 794, 804-05 (8th Cir. 2008).

With respect to the comment that the defendant took the gun from his waistband, the Court finds that the comment, taken in the context of the entire trial, did not deprive Booker of a right to a fair trial.  In response to the question "Can you tell us while the vehicle was fleeing from the police, what if anything did the driver say about the gun?" Crook actually testified "Okay.  He, he basically, like - - I really don't remember word for word what he said.  Just, he pulled it out, he pulled the gun out and showed it, and somehow he dropped it."  (Tr. 12:15-20.)  Although the prosecution's statement about Booker's waistband was not in evidence, the statement was not a drastic departure from the statement that Booker "pulled the gun out."  Furthermore, because Crook's testimony went to actual possession, if the jury credited her testimony, it would have found actual possession whether Booker pulled the gun out of his waistband or elsewhere. Furthermore, after the Court sustained the objection during closing, the prosecution restated Crook's testimony as "the defendant had the gun and dropped it or threw it to the floor." (Tr. Vol. II 7:19-22.)  Therefore, the misstatement of the evidence likely had little lasting impact on the jury.

With respect to the mention of Booker's blood alcohol content, the Court similarly finds that any misconduct did not cause Booker prejudice.  Although the Court did not admit Booker's medical records from November 20, it did allow the prosecution to question Booker regarding his alcohol consumption.  (Tr. 141:1-6.)  Booker testified on cross-examination that he was drinking on November 20, and testified he did not have any reason to doubt that his blood alcohol content was .136 after he was arrested. (Tr. 141:21-25.)  Because the jury had already heard evidence to the effect that Booker

had been drinking prior to the events giving rise to his criminal charges, the prosecution's mention of it during closing could not have denied Booker the right to a fair trial.

Finally, the Court provided sufficient instructions to the jury to prevent the misstatements from influencing the verdict.   The Court instructed the jury that "[s]tatements, arguments, questions, and comments by lawyers representing the parties in the case are not evidence."  (Jury Instruction 4.)  The Court also instructed the jury that with respect to testimony "it is your recollection which should control during your deliberations and not the statements of the Court or counsel."  (*Id.* 5.)  Based on the isolated nature of the alleged improprieties and the Court's instructions to the jury, the Court concludes that any misstatements by the prosecution during closing arguments were not sufficiently prejudicial to warrant a new trial.  *See Eagle*, 515 F.3d at 806 ("[T]he district court's instruction to the jury that closing arguments are not evidence alleviated any harm caused by the government's remarks."); *United States v. Spencer*, Civ. No. 12-280, 2013 WL 4519359, at *5 (D. Minn. Aug. 26, 2013) (finding that a closing argument which contained facts not in evidence was not prejudicial in light of the court's instructions to the jury that "[s]tatements, arguments, questions and comments by lawyers representing the parties in the case are not evidence").

## II.      MOTION FOR JUDGMENT OF ACQUITTAL

Federal Rule of Criminal Procedure 29 permits the Court to enter a judgment of acquittal after a guilty verdict if the evidence is insufficient to sustain the conviction. Fed. R. Crim. P. 29(c).  The standard for determining whether evidence is insufficient is

strict, requiring acquittal only where there is "no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore*, 108 F.3d 878, 881 (8th Cir. 1997); *see also United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012) ("Reversal is warranted only if no reasonable jury could have found guilt beyond a reasonable doubt."). In making this determination, the Court looks at the evidence in the light most favorable to the verdict, drawing all reasonable inferences and resolving all evidentiary conflicts in the government's favor. *United States v. Aponte*, 619 F.3d 799, 804 (8th Cir. 2010). But "the government is not entitled to inferences based on conjecture and speculation." *Id.* (citing *United States v. Boesen*, 491 F.3d 852, 858 (8th Cir. 2007)).

Booker brings his renewed motion for judgment of acquittal "based on the failure of the government to prove the elements of possession beyond a reasonable doubt." (Def.'s Mem. in Supp. of Mot. for a New Trial at 7.) Here, there are multiple interpretations of the evidence upon which a reasonable jury could have found Booker guilty beyond a reasonable doubt. For example, a reasonable jury could have credited the testimony of Crook and found that Booker was in actual possession of the firearm while in the vehicle. Furthermore, a reasonable jury could have believed Booker's testimony that he knew the gun was in the car and concluded that he knowingly intended to exercise control over the gun when he began searching for it under the seat. Because the evidence

was sufficient to support a guilty verdict, the Court will deny Booker's renewed motion for judgment of acquittal.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for a New Trial and Motion for Judgment of Acquittal [Docket No. 98] is **DENIED**.


DATED:  January 21, 2014                    ___s/ John R. Tunheim___
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                            United States District Judge